CHAMBER OF COMMERCE OF the
UNITED STATES of
America, Appellant,

v.

OCCUPATIONAL SAFETY AND
HEALTH ADMINISTRATION
et al.

No. 78–2221.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 7, 1979.

Decided July 10, 1980.

Stephen A. Bokat, Washington, D. C., with whom Stanley T. Kaleczyc, Washington, D. C., was on the brief, for appellant.

Allen H. Feldman, Counsel, U. S. Dept. of Labor, Washington, D. C., with whom Nancy L. Southard, Asst. Counsel, Washington, D. C., was on the brief, for appellees.

Donald R. Crowell, II, Washington, D. C., was on the brief for amicus curiae, Hobart Corp. et al., urging reversal.

John A. Terry, Asst. U. S. Atty., Washington, D. C., also entered an appearance for appellees.

Before BAZELON, Senior Circuit Judge, TAMM, Circuit Judge, and HAROLD H. GREENE,* U. S. District Judge for the District of Columbia.

Opinion for the court filed by Circuit Judge TAMM.

Opinion filed by Senior Circuit Judge BAZELON, concurring in the result only.

\* Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

1. The sponsor of the Senate bill, Senator Harrison Williams of New Jersey, explained during the floor debate that "[c]ertainly no one knows better than the workingman what the conditions are, where the failures are, where the

TAMM, Circuit Judge:

The Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651–678 (1976), allows a representative authorized by employees to accompany an inspector during a walkaround inspection of the employee's workplace. This case presents the issue of whether the Occupational Safety and Health Administration (Administration) must follow the notice-and-comment procedures of the Administrative Procedure Act (APA), 5 U.S.C. § 553 (1976), before declaring per se discriminatory the failure of an employer to compensate an employee representative for his walkaround time. On cross-motions for summary judgment, the district court rejected the challenges to the regulation, finding, among other things, that it was an "interpretive rule," rather than a "legislative rule," and therefore that it was exempt from the APA's notice-and-comment requirements. We reverse and remand the case to the district court with instructions to vacate the regulation and conduct any further proceedings, if necessary, not inconsistent with this opinion.

I

Concluding that work-related injuries and illnesses caused tremendous suffering, loss of production, and expense in lost wages, medical bills, and disability compensation payments, Congress enacted the Occupational Safety and Health Act of 1970 (Act), Pub.L.No.91–596, 84 Stat. 1590 (codified at 29 U.S.C. §§ 651–678 (1976)). Section 8 of the Act authorizes Administration inspectors to conduct workplace safety inspections. 29 U.S.C. § 657 (1976). Congress was especially concerned that these inspections include worker participation.[1] To ensure an opportunity for employees to communicate their safety concerns, Congress specifically required employers to permit an

hazards are, and particularly where there are safety hazards." 116 Cong.Rec. 38340 (1970), *reprinted in* Subcomm. on Labor of the Sen. Comm. on Labor & Pub. Welfare, 92d Cong., 1st Sess., Legislative History of the Occupational Safety and Health Act of 1970, at 430 (Comm. Print 1971).

employee representative to accompany the Administration inspector as he examines the work environment. *Id.* § 657(e).[2] Congress also prohibited employer discrimination against an employee for the employee's exercise of his or her rights under the Act. *Id.* § 660(c)(1).[3]

In November of 1971, the president of the Oil, Chemical and Atomic Workers Union, AFL–CIO (OCAW), filed a complaint with the Secretary of Labor alleging that the Mobil Oil Corporation's failure to pay employee representatives for their time during an Administration inspection of a Mobil refinery was a violation of the Act's antidiscrimination provision. The Assistant Secretary of Labor for Occupational Safety and Health rejected OCAW's contentions. Relying in part upon the Solicitor of Labor's opinion that walkaround time was not "hours worked" under section 3(*o*) of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(*o*) (1976), the Assistant Secretary concluded that an employer's failure to pay employees for time spent with the Administration inspector was not per se discriminatory. The Department of Labor subsequently promulgated the Assistant Secretary's decision as part of its rules. *See* 38 Fed.Reg. 2681 (1973) (codified at 29 C.F.R. § 1977.21(a) (1975))(rescinded 1977).

OCAW next sought judicial relief, but the district court upheld the Assistant Secretary's interpretation of the FLSA and the Act. Affirming that decision, this court held that because walkaround time primarily benefits employees and because the walkaround is conducted beyond the employer's control, walkaround time does not constitute "hours worked" under the FLSA. *Leone v. Mobil Oil Corp.*, 523 F.2d 1153, 1163–64 (D.C.Cir.1975). Furthermore, inasmuch as neither the terms of the Occupational Safety and Health Act of 1970 nor its legislative history offered guidance on the payment issue, we also held that payment for walkaround time was not so essential to the effectuation of the Act's provisions as to compel an inference of a payment requirement from the Act itself. *Id.* at 1159–61. We noted that the question of whether employers should compensate employees for their time with Administration inspectors is a policy question "properly reserved to the legislative process" and not to the courts. *Id.* at 1161.

In March of 1977, however, a new Assistant Secretary of Labor for Occupational Safety and Health took office. At her direction, the Administration staff and the Department Solicitor's office began a review of the walkaround pay controversy. As part of this review, the Assistant Secretary asked the Labor Department's Division of Fair Labor Standards to reevaluate its opinion that walkaround time was not "hours worked" under the FLSA.

Four months later, in an August 10, 1977 speech before the Fourteenth Biennial Convention of the OCAW, the Assistant Secretary announced for the first time that "[a]ny employer who fails to compensate employees for walkaround time will be charged with discriminating against their workers under Section 11(c) of the Act." Joint Appendix at 11. A month later the Solicitor of Labor issued a new opinion stating that an employer's failure to pay workers for walkaround time is discrimination prohibited by section 11(c)(1) of the Act, 29 U.S.C. § 660(c)(1) (1976). On September 20, without any public proceedings whatsoever,

---

**2.** Section 8(e) states in relevant part:

Subject to regulations issued by the Secretary [of Labor], a representative of the employer and a representative authorized by his employees shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any workplace under subsection (a) of this section for the purpose of aiding such inspection.

29 U.S.C. § 657(e) (1976).

**3.** Section 11(c)(1) directs:

No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.

*Id.* § 660(c)(1).

the Assistant Secretary promulgated what she termed an "interpretive rule and general statement of policy" declaring that "an employer's failure to pay employees for time during which they are engaged in walkaround inspections is discriminatory under section 11(c)." 42 Fed.Reg. 47344, 47344–45 (1977) (codified at 29 C.F.R. § 1977.21 (1979)). The Assistant Secretary proclaimed the new regulation to be retroactive as of the date of her OCAW speech, except for employers who first learned of the speech's contents at a later time.

On October 25, 1977, the Chamber of Commerce of the United States (Chamber) filed an action in the United States District Court for the District of Columbia challenging the validity of the new regulation and asking for declaratory and injunctive relief. Granting the Government's motion for summary judgment, the district court held that the regulation was interpretive and therefore exempt from the notice-and-comment requirements of the APA. The court concluded that the Administration did not exceed its statutory authority in issuing the new rule. The Chamber of Commerce appeals.

## II

■ At the outset, we reject any notion that the Administrator may have concerning the "hours worked" definition of the FLSA as a justification for the new walkaround pay regulation. Our decision in *Leone v. Mobil Oil Corp.,* 523 F.2d 1153 (D.C.Cir.1975), directly addressed this question. Walkaround time does not constitute hours worked because it is not an activity controlled by the employer and engaged in primarily for the employer's benefit. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 691–93, 66 S.Ct. 1187, 1194–1195, 90 L.Ed. 1515 (1946); *Tennessee Coal, Iron & Railroad v. Muscoda Local No. 123,* 321 U.S. 590, 598, 64 S.Ct. 698, 703, 88 L.Ed. 949 (1944). The employer neither selects the employee representative who accompanies the Administration inspector nor regulates

the employee representative's conduct. Indeed, employer control over the employee representative would thwart Congress's premise of an independent employee representative, a premise that underlies the walkaround provision. Moreover, as we also pointed out in *Leone,* although an employer may ultimately gain from improved industrial safety, the *primary beneficiaries* of the walkaround are the workers themselves. *See* 523 F.2d at 1163–64.

In short, the FLSA does not create a right to pay for walkaround time. An employer who refuses to compensate an employee for such time does not deprive the employee of rights conferred by the FLSA, and thus the employer's refusal to pay is not discriminatory under section 11(c)(1) of the Act. *Id.*

## III

The Administration contends its regulation has an alternative basis as the Administration's "expert conclusion" that an employer's refusal to pay an employee for walkaround time imposes an insurmountable economic barrier against the employee's exercise of his walkaround right. According to the Administration, this obstruction of the employee's right is a reasonably foreseeable consequence of the employer's refusal to pay and thus makes that refusal per se discriminatory behavior. In response, the Chamber argues that, in addition to other errors, the Administration violated the requirements of the APA by issuing the new regulation without publishing a general notice of proposed rulemaking in the Federal Register and without allowing interested parties to submit their comments before the regulation's adoption. *See* 5 U.S.C. § 553 (1976). The Administration concedes that it did not afford any notice or opportunity for comment but argues that its regulation is only an "interpretive rule" exempt from the notice-and-comment obligation by virtue of 5 U.S.C. § 553(b)(A) and (d)(2).[4]

4. Although the Administration also denominates its regulation as a "general statement of policy," its own descriptions of the regulation's import belie this characterization. When the

■ A rule is interpretive, rather than legislative, if it is not "issued pursuant to legislatively-delegated power to make rules having the force of law" or if the agency intends the rule to be no more than an expression of its construction of a statute or rule. *See Joseph v. United States Civil Service Commission,* 554 F.2d 1140, 1153 n.24 (1977). *See generally* 2 K. Davis, Administrative Law Treatise §§ 7:9–:16 (2d ed. 1979). Because the Administration possesses legislatively delegated power to make legislative rules and because it is apparent to us that the Administration must have intended this regulation to be an exercise of that power, we hold that the walkaround pay regulation is a legislative rule.

## A. The Administration's Legislative Rulemaking Authority

There is little room for doubt that Congress authorized the Secretary of Labor to issue legislative rules regarding workplace inspections. Section 8(g)(2) of the Act empowers the Secretary to prescribe "such rules and regulations as he may deem necessary to carry out [his] responsibilities under this chapter, including rules and regulations dealing with the inspection of an employer's establishment." 29 U.S.C. § 657(g)(2) (1976). This provision allows the Secretary to promulgate legislative as well as interpretive rules, *see Cerro Metal Products v. Marshall,* 620 F.2d 964, at 982 (3d Cir. 1980); *Marshall v. W & W Steel Co.,* 604 F.2d 1322, 1325, 1326 n.3 (10th Cir. 1979), and the Secretary has already em-

ployed quasi-legislative power with respect to workplace inspections, *see, e. g.,* 29 C.F.R. pt. 1903 (1979).[5]

## B. The Administration's Legislative Rulemaking Intent

■ Ascertaining that an agency intended to engage in legislative rulemaking presents a far more difficult inquiry. Divining agency intent is rarely a simple matter, for bureaucratic boilerplate often obscures the true purpose. The administrative agency's own label is indicative but not dispositive; we do not classify a rule as interpretive just because the agency says it is. *See Citizens to Save Spencer County v. United States Environmental Protection Agency,* 600 F.2d 844, 879 n.171 (D.C.Cir. 1979); *Citizens Communication v. FCC,* 447 F.2d 1201, 1204 n.5 (D.C.Cir.1971). Instead, "it is the substance of what the [agency] has purported to do and has done which is decisive." *Columbia Broadcasting System, Inc. v. United States,* 316 U.S. 407, 416, 62 S.Ct. 1194, 1200, 86 L.Ed. 1563 (1942).

■ Despite the Administration's averments, we cannot conclude that it intended its new regulation to be interpretive. In *Leone v. Mobil Oil Corp.,* 523 F.2d 1153 (D.C.Cir.1975), we held that neither the terms of the Act nor the Act's legislative history nor the policies underlying the employee walkaround right require employers to compensate employees for walkaround time. *Id.* at 1159–61. We would prefer to believe that the Administration acts in good faith; we therefore believe the Administra-

---

Assistant Secretary addressed the OCAW convention, she stated flatly: "A WORKER MUST BE PAID FOR WALKAROUND TIME." Joint Appendix at 11 (emphasis in original). She promised the union that "*[a]ny employer who fails to compensate employees for walkaround time will be charged* with discriminating against their workers under Section 11(c) of the Act." *Id.* (emphasis added). These remarks announce a definite and final rule, not a general and unsettled proposition. Adopting a similar tone, the regulation itself pronounces that "an employer's failure to pay employees for time during which they are engaged in walkaround inspections is discriminatory under section 11(c)." 29 C.F.R. § 1977.21 (1979). These statements demonstrate that the regulation "establishes a binding norm, and thus does

not, as a policy statement must, 'leave[ ] the agency and its decision-makers free to exercise discretion.'" *Regular Common Carrier Conf. v. ICC,* 628 F.2d 248, at 251 (D.C.Cir.1980) (quoting *American Bus Ass'n v. United States,* 627 F.2d 525, at 529 (D.C.Cir.1980)). *See Guardian Fed. Sav. & Loan Ass'n v. Federal Sav. & Loan Ass'n* 589 F.2d 658, 666 (D.C.Cir. 1978); *Pacific Gas & Elec. Co. v. FPC,* 506 F.2d 33, 41 (D.C.Cir.1974).

5. Though the Secretary of Labor is authorized to issue legislative rules, we express no opinion whatsoever at this time as to whether this particular regulation was a valid exercise of that authority. *See* pages 470–471 *infra.*

tion would not issue an interpretation in flagrant defiance of this court's *Leone* decision. In any event, we are certain the Administration realized that statutory interpretation by an agency is not necessarily controlling, *see Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944), and thus it knew that although "courts often defer to an agency's interpretive rule they are always free to choose otherwise." *Joseph v. United States Civil Service Commission*, 554 F.2d at 1154 n.26. *See Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 116, 100 S.Ct. 2051, 2060, 64 L.Ed.2d 766 (1980). After this court's ruling in *Leone* that the Act, its legislative history, and its policies do not mandate walkaround pay, an Administration issuance of a differing view solely as a matter of its own interpretation would be inconceivable. Such a rule would be a mere phasm of agency action, "full of sound and fury,/ Signifying nothing," W. Shakespeare, *Macbeth*, act V, sc. v, lines 27–28.[6]

■ Moreover, the effect of the new regulation exposes the Administration's true intent.[7] Interpretive rules " 'are statements as to what the administrative officer thinks the statute or regulation means.' " *Citizens to Save Spencer County v. United States Environmental Protection Agency*, 600 F.2d at 876 (quoting *Gibson Wine Co. v. Snyder*, 194 F.2d 329, 331 (D.C.Cir.1952)). Such rules only provide a "clarification of statutory language," *Joseph v. United States Civil Service Commission*, 554 F.2d at 1153; the interpreting agency only " 'reminds' affected parties of existing duties," *Citizens to Save Spencer County v. United States Environmental Protection Agency*, 600 F.2d at 876 n.153. *See Yale Broadcasting Co. v. FCC*, 478 F.2d 594, 599 (D.C.Cir.), *cert. denied*, 414 U.S. 914, 94 S.Ct. 211, 38 L.Ed.2d 152 (1973).

The Administration could not be explaining or clarifying the Act's language, for, as we concluded in *Leone*, the Act neither prohibits nor compels pay for walkaround time. There was no "existing duty" to serve as the subject of an Administration reminder. Congress has not "legislated and indicated its will" on the question of walkaround pay, therefore the Administration must have done more than exercise its " 'power to fill up the details.' " *United States v. Grimaud*, 220 U.S. 506, 517, 31 S.Ct. 480, 483, 55 L.Ed. 563 (1911) (quoting *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 43, 6 L.Ed. 253 (1825)).

Though the walkaround pay regulation does not merely *explain* the statute, the effect of an interpretive rule, the regulation certainly endeavors to *implement* the statute, the effect of a legislative rule. *See Gibson Wine Co. v. Snyder*, 194 F.2d 329, 331 (D.C.Cir.1952). *Accord, National Association of Insurance Agents v. Board of Governors of the Federal Reserve System*, 489 F.2d 1268, 1270 (D.C.Cir.1974) (per curiam). The Administration found walkaround pay essential because "the failure [of an employer] to pay for [an employee's] walkaround is inherently destructive . . . of the entire enforcement scheme of the Act." 42 Fed.Reg. 47344, 47345 (1977). By making this determination, the Administration provided the policy decision Congress omitted—namely, that without walkaround pay there is no walkaround right. It is clear to us that the Administration has attempted through this regulation to supplement the Act, not simply to construe it, and therefore the regulation must be treated as a legislative rule. *Cf. Energy Consumers & Producers Association v. DOE*, 632 F.2d 129, at 141 (Temp.Emer.Ct.App.1980) (regulation interpretive because meaning of statutory term neither expanded nor contracted in form or

---

6. *Cf. Whirlpool Corp. v. Marshall*, 445 U.S. 1, 100 S.Ct. 883, 63 L.Ed.2d 154 (1980) (interpretive regulation upheld because complimentary to the purposes and scheme of the Act). *See also Marshall v. Ohio Bell Tel.*, No. C 48–479 (N.D. Ohio Apr. 3, 1980) (walkaround pay regulation held invalid).

7. Courts often infer the intent behind an action from the action's foreseeable effects. *See, e. g., Brown v. Califano*, 627 F.2d 1221, at 1234 n. 79 (D.C.Cir.1980).

substance), *cert. denied,* —— U.S. ——, 101 S.Ct. 102, 66 L.Ed.2d 38 (1980).

## IV

■ Because the Administration's rule is an attempted exercise of legislative power, it must be vacated for failure to comply with the procedures specified by the Administrative Procedure Act, 5 U.S.C. § 553 (1976). The APA requires the Assistant Secretary to publish a general notice of proposed rulemaking in the Federal Register at least thirty days before the proposed rule is to take effect. *Id.* § 553(b), (d). The Assistant Secretary must allow interested parties to submit their comments before a final rule is adopted. *Id.* § 553(c).

The Assistant Secretary should not treat the procedural obligations under the APA as meaningless ritual. Parties affected by the proposed legislative rule are the obvious beneficiaries of proper procedures. Prior notice and an opportunity to comment permit them to voice their objections before the agency takes final action. Congress enacted 5 U.S.C. § 553 in part to " 'afford adequate safeguards to private interests.' " H.R. 1203, 79th Cong., 1st Sess. (Comm. Print June, 1945) (quoting S. Doc. 8, 77th Cong., 1st Sess. 103 (1941) (Final report of Att'y General's Comm. on Ad. Proc.)), *reprinted in* S. Doc. 248, 79th Cong., 2d Sess. 20 (1946) (official legislative history of the Administrative Procedure Act). Given the lack of supervision over agency decisionmaking that can result from judicial deference and congressional inattention, *see* Cutler & Johnson, *Regulation and the Political Process,* 84 Yale L.J. 1395 (1975), this protection, as a practical matter, may constitute an affected party's only defense mechanism.

An agency also must not forget, however, that it too has much to gain from the assistance of outside parties. Congress recognized that an agency's " 'knowledge is rarely complete, and it must learn the * * * viewpoints of those whom the regulation will affect. * * * [Public] participation * * * in the rule-making process is essential in order to permit administrative agencies to inform themselves . . . .' " H.R. 1203, 79th Cong., 1st Sess. (Comm. Print June, 1945) (quoting S. Doc. 8, 77th Cong., 1st Sess. 103 (1941) (Final report of Att'y General's Comm. on Ad. Proc.)), *reprinted in* S. Doc. 248, 79th Cong., 2d Sess. 20 (1946). Comments from sources outside of the agency may shed light on specific information, additional policy considerations, weaknesses in the proposed regulation, and alternative means of achieving the same objectives. *See National Petroleum Refiners Association v. FTC,* 482 F.2d 672, 683 (D.C.Cir.1973), *cert. denied,* 415 U.S. 951, 94 S.Ct. 1475, 39 L.Ed.2d 567 (1974). By the same token, public scrutiny and participation before a legislative rule becomes effective can reduce the risk of factual errors, arbitrary actions, and unforeseen detrimental consequences. *See* Freedman, *Summary Action by Administrative Agencies,* 40 U.Chi.L.Rev. 1, 27–30 (1972).

Finally, and most important of all, highhanded agency rulemaking is more than just offensive to our basic notions of democratic government; a failure to seek at least the acquiescence of the governed eliminates a vital ingredient for effective administrative action. *See* Hahn, *Procedural Adequacy in Administrative Decisionmaking: A Unified Formulation* (pt. 1), 30 Ad. L.Rev. 467, 500–04 (1978). Charting changes in policy direction with the aid of those who will be affected by the shift in course helps dispel suspicions of agency predisposition, unfairness, arrogance, improper influence, and ulterior motivation. Public

---

**8.** Characterization of 29 C.F.R. § 1977.21 as a legislative rule is consistent with our previous analysis of the Occupational Safety and Health Act's walkaround provision. In *Leone* we held that the courts could not impose a walkaround pay requirement and that walkaround pay remained a question "properly reserved to the legislative process." *Leone v. Mobil Oil Corp.,*

523 F.2d 1153, 1161 (D.C.Cir.1975). Though in using the term "legislative process" we were contemplating congressional action, we obviously meant at least that more than an interpretation of the Occupational Safety and Health Act would be necessary to compel employer payment for walkaround time.

participation in a legislative rule's formulation decreases the likelihood that opponents will attempt to sabotage the rule's implementation and enforcement. *See* Bonfield, *Public Participation in Federal Rulemaking Relating to Public Property, Loans, Grants, Benefits, or Contracts,* 118 U.Pa.L.Rev. 540, 541 (1970). *See generally Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 171–72 & n. 19, 71 S.Ct. 624, 648–649, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring).

In holding that this regulation is legislative in nature but improperly promulgated, we intimate no view on whether the Assistant Secretary could reissue the same rule after satisfying the requirements of 5 U.S.C. § 553. Only after the full notice-and-comment procedures have run their course will we have a record enabling us to judge whether ordering pay for walkaround time is indeed a statutorily authorized, rational, nonarbitrary, and noncapricious method of supplementing the Act's provisions. *See* 5 U.S.C. § 706(2) (1976). *See generally Natural Resources Defense Council, Inc. v. United States Nuclear Regulatory Commission,* 547 F.2d 633, 658–61 (D.C. Cir.1976) (Tamm, J., concurring), *rev'd on other grounds sub nom. Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978); *Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 852 (D.C.Cir.1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971). We leave that question for another day.

### V

We cannot permit the Administration to issue a legislative rule without complying with the Administrative Procedure Act. As Chief Justice Charles Evans Hughes declared four decades ago: "Democracy is a most hopeful way of life, but its promise of liberty and of human betterment will be but idle words save as the ideals of justice, not only between man and man, but between government and citizen, are held supreme." Address of Chief Justice Hughes, 150th Anniversary of the Supreme Court (Feb. 1, 1940), *reprinted in* 309 U.S. at v, xii (1940). The judgment of the district court is reversed, and the case is remanded to the district court with instructions to vacate the Administration's walkaround pay regulation, 29 C.F.R. § 1977.21 (1979), and to conduct any further proceedings not inconsistent with this opinion that it deems necessary.

*It is so ordered.*

BAZELON, Senior Circuit Judge, concurring in the result only:

I write separately because I seriously doubt that application of notice and comment procedures can depend entirely on neat, discrete categories. The labels associated with exceptions to 5 U.S.C. § 553 have "fuzzy perimeters"[1] and depend on distinctions " 'enshrouded in considerable smog.' "[2] Thus, I find it harder to criticize the agency for not analyzing correctly the import and legal status of the action challenged here.

Nonetheless, the Occupational Safety and Health Administration has announced in no uncertain terms its intention to charge employers with a statutory violation based on its new view of a statutory provision. *See* majority opinion at pp. 466–467. This announcement is prospective and definitive, factors which strongly suggest that, at least without more, it is not merely a "general statement of policy" exempt from § 553. *See, e. g., American Bus Ass'n v. ICC,* 627 F.2d 525, at 531–533 (D.C.Cir.1980); *Guardian Federal Savings and Loan Ass'n v. Federal Savings and Loan Insurance Corp.,* 589 F.2d 658, 666 (D.C.Cir.1978). And, although it serves as an interpretation of existing law, it also effectively enunciates a new requirement heretofore nonexistent for

1. *Pacific Gas & Electric Co. v. FPC,* 506 F.2d 23, 38 (D.C.Cir.1974).

2. *American Bus Ass'n v. ICC,* 627 F.2d 525, at 529 (D.C.Cir.1980) (quoting *Noel v. Chapman,* 508 F.2d 1023, 1030 (2d Cir. 1975), on distinction between general statement of policy and rule requiring publication).

compliance with the law. In this fashion, OSHA is exercising the authority Congress delegated to it to " 'fill up the details' by the establishment of administrative rules and regulations, the violation of which could be punished by fine." *United States v. Grimaud*, 220 U.S. 506, 517, 31 S.Ct. 480, 483, 55 L.Ed. 563 (1911). If left undisturbed by this court, this agency action would wield a significant change in the practices which private employers must follow and in the enforcement steps the agency must take. Under these circumstances, I believe that advance notice and opportunity for public participation are vital if a semblance of democracy is to survive in this regulatory era.