CREDIT UNION NATIONAL ASSOCIA-TION, et al., Plaintiffs,

v.

NATIONAL CREDIT UNION ADMINIS-TRATION BOARD, Defendant.

Civ. A. No. 83–0251.

United States District Court, District of Columbia.

Oct. 25, 1983.

(b) $5,000;

Paul J. Lambert of Bingham, Dana & Gould, Boston, Mass., for plaintiffs.

Sandra M. Schraibman, David M. Glass, Brook Hedge, and Betsy J. Grey, Dept. of Justice, Washington, D.C., for defendant.

## OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

The Court has before it plaintiffs' motion for summary judgment; defendant's motion for judgment on the pleadings or, in the alternative, for summary judgment; and memoranda in support thereof and opposition thereto. Plaintiffs, Credit Union National Association ("CUNA") and National Association of State Credit Union Supervisors ("NASCUS"), challenge the validity of an Interpretive Ruling and Policy Statement ("IRPS 82–2") issued by the National Credit Union Administration Board ("NCUA" or "the Board") on April 28, 1982, setting payout priorities for involuntarily liquidating federal credit unions. Their objections are two-fold: first, plaintiffs claim that defendant failed to comply with the notice and comment provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553; in addition, they claim that defendant's rule is substantively defective because it is unauthorized by statute and not in accordance with law. Defendant contends that APA notice and comment requirements are inapplicable to an interpretive rule like IRPS 82–2 and that it is substantively justified under the Federal Credit Union Act, 12 U.S.C. § 1751 et seq. For the reasons set forth below, the Court concludes that IRPS 82–2 is not exempt from the notice and comment provisions of the APA and that the ruling is therefore invalid for failure to comply with necessary procedures.

### BACKGROUND

NCUA is an independent executive agency, managed by a three-member board, charged with supervising federal credit unions. 12 U.S.C. § 1752a. Among its responsibilities, it provides "share insurance" to federal credit union savers of up to $100,000 per account. 12 U.S.C. § 1781(a). State-chartered credit unions may also qualify for insurance coverage. 12 U.S.C. § 1781(a), (b). Premiums are collected from the insured credit unions and deposited in a special United States Treasury Fund called the "National Credit Union Share Insurance Fund" ("NCUSIF"). 12 U.S.C. §§ 1782, 1783. The NCUA Board also acts as liquidating agent for bankrupt or insolvent federally-chartered credit unions. 12 U.S.C. § 1787(a)(1). When it determines that a credit union is insolvent, the Board makes insurance payments to members out of the NCUSIF and becomes subrogated to their rights against the closed credit union to the extent of the payments. 12 U.S.C. § 1787(c), (d). The Board must then proceed to "wind up the affairs" of the closed credit union, which includes making distributions to itself, to members, and to "other creditors." 12 U.S.C. § 1787(a)(2).

The current dispute concerns the manner in which the Board performs its liquidation duties. IRPS 82–2, "Payment Priorities of an Involuntary Liquidating Federal Credit Union," was issued by NCUA on April 28, 1982, in response to the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101 et seq., and to a report of the General Accounting Office (GAO) which dealt with NCUA's liquidation procedures. Previously, the Board recognized the following priorities: first, secured creditors, up to the value of their collateral; second, unsecured creditors and secured creditors to the extent that their claims exceeded their security interest; and finally, members to the extent of their uninsured shares and NCUSIF as subrogee of the rights of paid-out insured members. Under the new ruling, this scheme of creditor priority was abandoned. Switching from a three-tiered to a two-tiered hierarchy, IRPS 82–2 provides that, after secured creditors are paid up to the value of their collateral, both unreimbursed members and NCUSIF as subrogee share in any remaining funds with unsecured creditors and secured creditors to the extent that their claims exceed their security interest.

Although the rules pertaining to state-chartered credit unions differ, the effect of IRPS 82–2 is similar. Under the old system, state law governed the priorities at liquidation, and statutes uniformly call for

creditor priority over members. IRPS 82–2 states, however, that "[i]n no event will state law apply where the rights provided to members and creditors cause them to receive a higher priority vis-a-vis NCUSIF than is noted in this ruling."

Thus, the net effect of IRPS 82–2 is to eliminate unsecured creditor priority over members and NCUSIF. The GAO advocated this change in its 1982 report in order to reduce the cost of liquidations to NCUA. (See "The National Credit Union Administration Should Revise Liquidation Procedures to Reduce the Net Cost of Credit Union Liquidation" at 7–8). Before considering the merits of plaintiffs' claims, defendant's preliminary objections to their standing and to the ripeness of this case must be addressed. The Court finds that neither ground bars it from adjudicating this controversy.

## I. PLAINTIFFS HAVE STANDING TO CHALLENGE THE NCUA'S RULING

 The standing doctrine has both constitutional and prudential dimensions. *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982). Judicial power is limited to "cases and controversies" by Article III of the Constitution. In addition, the requirement of an actual injury to a party with a personal stake in the outcome assures that a court can resolve disputes in a concrete factual context and with the benefit of vigorous advocacy. *Id.* at 472–73, 102 S.Ct. at 758–59; *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). A party has standing to challenge agency action if it suffers injury in fact and falls within the zone of interests to be protected or regulated by the statute in question. *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Community Nutrition Institute v. Bergland,* 493 F.Supp. 488, 492 (D.D.C. 1980); *Duke City Lumber Co. v. Butz,* 382 F.Supp. 362 (D.D.C.1974), *aff'd,* 539 F.2d 220 (D.C.Cir.1976), *cert. denied,* 429 U.S.

1039, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977). CUNA and NASCUS satisfy both these tests.

## A. INJURY

Plaintiffs allege that they have "personally ... suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Valley Forge,* 454 U.S. at 472, 102 S.Ct. at 758. CUNA, the national trade association for credit unions, has been prevented by the absence of notice and comment procedures from performing its organizational mandate of monitoring regulatory developments, reporting to its members, and advocating their interests. Affidavit of Jim R. Williams. *See Center for Auto Safety v. Tiemann,* 414 F.Supp. 215 (D.D.C.1976), *rev'd on other grounds,* 580 F.2d 689 (D.C.Cir.1978). It also has standing to sue on behalf of its members. *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 342–43, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977); *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). The new NCUA rule on priorities clearly increases creditors' risks in making loans to credit unions, and that greater risk means credit will be less available and/or more costly to CUNA members. *See* Affidavit of Leonard J. Santow. Whether creditors elect to require higher interest rates, to decrease lending, or to demand and perfect security interests, credit unions will suffer financially and possibly in terms of decreased flexibility. Such injuries, stemming from third party action, provide an adequate basis for standing. *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). The penalty will be passed on to credit union members in the form of higher interest loans or decreased dividends, defeating the goal of credit unions to provide low cost services to their members. *See* Affidavit of Eldon J. Thompson. Some injury has already occurred and future injury is not merely "speculative"; rather, it is a natural consequence of the normal practice of lenders. *See* Santow affidavit, ¶¶ 10–13. CUNA members may also suffer, as the Board

itself recognized, if increased credit costs force marginal credit unions into liquidation. *See* GAO report at 8.

Similarly, NASCUS alleges sufficient injury for standing. It is a nonprofit corporation comprised of the regulatory departments of forty-seven states and the Commonwealth of Puerto Rico that are responsible for the supervision of state-chartered credit unions and the enforcement of relevant state laws. As such, its organizational monitoring and lobbying responsibilities were impaired by the NCUA Board's failure to solicit notice and comment. *See* Affidavit of William Drohan. NASCUS's members have also been injured in that they cannot both enforce state law on creditor priority in liquidation and facilitate share insurance for credit union members by complying with the federal requirements. *See* Drohan affidavit, ¶ 7. These alleged injuries are not "generalized grievances," *Flast v. Cohen*, 392 U.S. 83, 106, 88 S.Ct. 1942, 1956, 20 L.Ed.2d 947 (1968), based merely on NASCUS's members' status as citizens or taxpayers, allegations which would plainly fall short of the constitutional requisite. *See, e.g., Valley Forge*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700; *United States v. Richardson*, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). Here, NASCUS alleges a particular harm not shared by the population in general and which is clearly attributable to NCUA's action. *See Warth*, 422 U.S. at 502–08, 95 S.Ct. at 2207–10.

### B. ZONE OF INTERESTS

The second test to determine a party's standing is "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute...." *Data Processing*, 397 U.S. at 153, 90 S.Ct. at 830. Again, both plaintiffs satisfy this threshold requirement. They seek to protect the financial integrity of credit unions and the availability of share insurance.

"The applicable 'zone' covers interests regulated as well as protected by the statute in question." *Community Nutrition*, 493 F.Supp. at 492.

### II. PLAINTIFFS' CLAIMS ARE RIPE FOR ADJUDICATION

Assessing ripeness requires an evaluation of two factors: 1) the fitness of the issues for judicial decision, and 2) the hardship to the parties of withholding court consideration. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). The ripeness doctrine is intended to avoid judicial entanglement in abstract disagreements and to protect agencies from interference. *Abbott Laboratories, supra; Continental Air Lines v. CAB*, 522 F.2d 107, 124 (D.C.Cir.1975). The claims presented here are ripe under this analysis and judicial review at this time presents neither of the dangers noted above.

### A. FITNESS FOR JUDICIAL DETERMINATION

"Fitness" encompasses three concerns: whether a purely legal issue is presented, judicial efficiency, and finality. *Independent Bankers Association of America v. Smith*, 534 F.2d 921, 927–29 (D.C.Cir.), *cert. denied*, 429 U.S. 862, 97 S.Ct. 166, 50 L.Ed.2d 141 (1976). Here, plaintiffs' APA claims and substantive claims present purely legal questions on the construction of IRPS 82–2 and NCUA's statutory authority. Judicial efficiency is served by determining the validity of NCUA's ruling at this time rather than in various challenges to particular liquidations. It is also clear that the Board does not dispute that IRPS 82–2 is, in effect, "final" (Answer, ¶ 15). The ruling is therefore "fit" for review. *See Fidelity Television, Inc. v. FCC*, 502 F.2d 443 (D.C.Cir. 1974).

### B. HARDSHIP TO THE PARTIES

The existence of IRPS 82–2 represents a hardship to plaintiffs in that it increases lenders' risks and thereby makes loans to

credit unions less available and/or more costly. *See* Santow affidavit, ¶ 13. The rule also places NASCUS's members in a position of uncertainty on what priorities govern state-chartered credit union liquidations and therefore on how to discharge their official duties. *See* Drohan affidavit, ¶ 7. In contrast, defendant offers no claim that immediate judicial consideration will cause it any hardship and none is readily apparent. Thus, the balance of hardship, along with an evaluation of the fitness for review of the issues presented, lead to the conclusion that plaintiffs' claims are ripe for adjudication.

### III. IRPS 82–2 IS NOT EXEMPT FROM THE NOTICE COMMENT REQUIREMENTS OF THE APA

■ The APA's prescription of notice and comment procedures for agency rulemaking, 5 U.S.C. § 553, together with its broad definition of what amounts to a "rule", U.S.C. § 551(4), reflect a commitment "to reintroduce public participation and fairness to affected parties after governmental authority has been delegated to unrepresentative agencies." *Batterton v. Marshall*, 648 F.2d 694, 703 (D.C.Cir.1980) (footnote omitted). Among the limited exceptions to the general notice and comment requirement is the exemption for "interpretive rules," 5 U.S.C. § 553(b)(3)(A). This exemption, like the others, is to be narrowly construed. *Humana of South Carolina, Inc. v. Califano*, 590 F.2d 1070, 1082 (D.C.Cir.1978).

■ Distinguishing substantive or legislative rules—which are subject to notice and comment—from interpretive rules— which are exempt—is often not an easy task. "[T]he categories have 'fuzzy perimeters,'" *Batterton*, 648 F.2d at 702, and "[m]erely because a rule has wide ranging effect does not mean that it is 'legislative' rather than 'interpretive.'" *British Caledonian Airways, Ltd. v. CAB*, 584 F.2d 982, 989 (D.C.Cir.1978). The so-called "substantial impact test," formerly used to determine the applicability of APA procedures in this circuit, has been repudiated. *Cabais v. Egger*, 690 F.2d 234, 237 (D.C.

Cir.1983). Instead, the proper analysis was articulated in *Gibson Wine Co. v. Snyder*, 194 F.2d 329, 331 (D.C.Cir.1952):

> Generally speaking, it seems to be established that "regulations," "substantive rules," or "legislative rules" are those which create law; usually implementary to an existing law, whereas interpretative rules are statements as to what the administrative officer thinks the statute or regulation means.

In applying the *Gibson Wine* test, however, "there is no 'reason to doubt the continuing vitality of the substantial impact test as ... one of several criteria for evaluating claims of exemption from [the APA].'" *Cabais*, 690 F.2d at 237, quoting *Batterton*, 648 F.2d at 709 n. 83.

■ Under this analysis, it is inescapable that IRPS 82–2 is a legislative rather than an interpretative rule, despite NCUA's own characterization. Such agency labels, although "entitled to a significant degree of credence," *Cabais*, 690 F.2d at 238 n. 7; *British Caledonian*, 584 F.2d at 992, are not dispositive. Here, the Board clearly issued IRPS 82–2 to *implement* its mandate to make payments as liquidating agent for closed federal credit unions pursuant to 12 U.S.C. § 1787(a)(2). The agency's "intent"—a factor the Court must take into account—is revealed by the rule's effect and not only by its characterization. *Chamber of Commerce of the United States v. OSHA*, 636 F.2d 464, 468 (D.C.Cir. 1980), quoting *Columbia Broadcasting System, Inc. v. United States*, 316 U.S. 407, 416, 62 S.Ct. 1194, 1199, 86 L.Ed. 1563 (1942).

The Board stated that its intent was "to make ... a change to the payout priority," in accordance with the GAO's recommendation. Although the statute itself is silent on the matter of payout priorities, the Board relied on its own authority to "establish[ ]" priorities. Such legislative action by an agency cannot be disguised by the simple semantic maneuver of claiming it "explains" or "clarifies" 12 U.S.C. §§ 1787(a)(2) and 1787(d). *See e.g., Chamber of Commerce*, 636 F.2d 464; *American*

**592**

*Bus Association v. United States*, 627 F.2d 525 (D.C.Cir.1980). Defendant implicitly recognizes the true character of IRPS 82–2 by describing the rule as giving "operational meaning" to the statute. (Defendant's memorandum in support of its motion at p. 15.) The Board's decision to apply the new priority scheme prospectively only is a further indication that its effect is to create new law and not merely to interpret existing law.

Because IRPS 82–2 is not an "interpretive rule", it must be vacated for failure to comply with the APA's notice and comment requirements.* Moreover, the Court's decision as set forth herein makes it unnecessary to decide whether the defendant's action is unauthorized or violative of the Federal Credit Union Act, 12 U.S.C. § 1751 *et seq.* Without the benefit of a full administrative record, the Court expresses no view at this time.

### CONCLUSION

For all the reasons above, the court grants plaintiffs' motion for summary judgment and denies defendant's motion for judgment on the pleadings, or, in the alternative, for summary judgment, and will enter an order of even date herewith vacating IRPS 82–2. This matter is hereby remanded to the agency for action in accordance with this opinion. In view of the foregoing, this case will be dismissed.

---

* Defendant also claimed, in a footnote, that IRPS 82–2 is exempt from notice and comment requirements under the "public benefits" exception of 5 U.S.C. § 553(a)(2). Defendant failed to cite any authority pertinent to this argument and the Court finds it without merit.