Frederick C. STURM, Petitioner,

v.

Jesse JAMES, Warden, Otisville, FCI, and the United States Parole Commission, Respondents.

Frederick C. STURM, Petitioner,

v.

UNITED STATES PAROLE COMMISSION and Jesse James, Warden, F.C.I. Otisville, Respondents.

Nos. 86 Civ. 4868 (JES), 86 Civ. 9610 (JES).

United States District Court, S.D. New York.

April 20, 1988.

Cheryl J. Sturm, Port Jervis, N.Y., for petitioner.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for respondents; Susan P. Johnston, Asst. U.S. Atty., of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge.

In these two related actions, petitioner Frederick C. Sturm seeks various remedies for alleged violations of his rights flowing from the circumstances surrounding a new initial parole hearing held on January 15, 1986. The portion of 86 Civ. 4868 ("first petition" or "prior petition") which sought a writ of habeas corpus was dismissed by the Court after Oral Argument, and the Court ordered that the record be supplemented as to the remaining aspects of that petition. Subsequently, petitioner filed another petition, 86 Civ. 9610, which the Court accepted as a related case. For the reasons set forth below, the Court concludes that both petitions must be dismissed.

### FACTS

On March 27, 1981, petitioner was sentenced to a ten-year term of imprisonment based upon his conviction of five counts of mail fraud and one count of conspiracy to commit mail fraud. *See* Petition (86 Civ. 4868) ("Pet. I") at ¶ 6; Affidavit of Jack Schneider dated February 26, 1986 ("Schneider Aff.") at ¶ 2 (Ex. B to Declaration of Susan P. Johnston dated July 24, 1986 ("Johnston Dec.")). While released on bail pending appeal, petitioner applied for and received a passport under a false name and used it to travel outside the United States. *See* Schneider Aff. at ¶ 3; *see also* Petition (86 Civ. 9610) ("Pet. II") at ¶ 5. Petitioner subsequently pleaded guilty to an indictment based on this offense, and on August 25, 1982, he was sentenced to a three-year term to run concurrently with the ten-year term previously imposed. *See* Pet. II at ¶ 5; Schneider Aff. at ¶ 3.

At petitioner's initial parole hearing conducted in 1983, a presumptive parole date of December 2, 1985 was recommended. *See* Pet. I at ¶ 9. This recommendation that petitioner be paroled after service of 40 months imprisonment was adopted by the United States Parole Commission ("Parole Commission" or "Commission") and in July 1985, the presumptive parole date was changed to an effective parole date of December 2, 1985. *See id.* at ¶ 12.

Subsequently, however, petitioner was convicted of two counts of filing false claims against the United States and one

count of mail fraud. *See* Schneider Aff. at ¶ 6. On October 10, 1985, petitioner was sentenced to an eighteen-month term of imprisonment on each count. These terms were to run concurrently with one another but consecutive to the previously-imposed ten-year term. The Parole Commission was notified of this new conviction and sentence by letter dated October 28, 1985. *See id.*

On November 27, 1985, petitioner received a notice of action which retarded his effective parole date and incorrectly indicated that his case had been scheduled for a new initial parole hearing pursuant to 28 C.F.R. § 2.28(a), which provides for reopening upon receipt of "new significant favorable information." *See* Pet. II at ¶ 12; *see also* 28 C.F.R. § 2.28(a) (1987). A corrected notice of action was therefore issued on January 6, 1986, stating that the reopening was pursuant to 28 C.F.R. § 2.28(c), which provides for reopening to consider additional sentences received following initial parole consideration. *See* Pet. II at ¶ 13 & Ex. A; *see also* 28 C.F.R. § 2.28(c) (1987).

On January 15, 1986, petitioner's new initial hearing was held. *See* Pet. I at ¶ 17. Pursuant to the direction in 28 C.F.R. § 2.20(i), which sets forth the paroling policy guidelines for criminal behavior committed while in confinement, the rescission guidelines at 28 C.F.R. § 2.36 were consulted. *See* Schneider Aff. at ¶ 10. Applying those guidelines, the Examiner Panel concluded that petitioner's mailing of false and fictitious tax returns to the Internal Revenue Service while incarcerated constituted "new criminal conduct in the community while incarcerated" and thus was governed by section 2.36(a)(3). *See id.* Petitioner contends that in making this determination, the Examiner Panel improperly relied on section 2.36–02(b) of the Commission's Notes and Procedures Manual ("Manual"), which contained a note providing that

"[o]ffenses not limited to the confines of a prison facility or [Community Treatment Center] (e.g., submitting false tax returns to the IRS from a prison facility) are graded as new criminal behavior in the community." *See* Pet. I at ¶ 18; *see also* Manual at 102 (Ex. B to Memorandum of Law in Support of Respondent's [sic] Motion to Dismiss the Petition and for Costs ("Resp. Mem.")).[1]

Unlike 28 C.F.R. § 2.36(a)(2), which applies to crimes committed in or confined to the prison and includes its own parole release guidelines, section 2.36(a)(3) requires calculation of a new salient factor score and application of the more severe section 2.20 guidelines. Thus, a new salient factor score was assessed for petitioner and this score, coupled with the offense severity rating deemed applicable, resulted in a presumptive parole release guideline range of 48–60 months. *See* Schneider Aff. at ¶ 10. Pursuant to section 2.36(a)(3), this range was then added to the 40 months petitioner had originally been required to serve, resulting in a range of 88 to 100 months to be served before release. The Commission then fixed a release date at the low end of that range, requiring petitioner to serve 88 months before being released. *See* Schneider Aff. at ¶ 10.

The Commission adopted the recommendation of the Examiner Panel by notice of action dated February 11, 1986, and on April 16, 1986, the National Appeals Board rendered a final decision affirming the presumptive parole date. *See* Pet. II at ¶¶ 16–18.

## DISCUSSION

At the outset, the Court notes that review of Parole Commission decisions is extremely limited because of the broad discretion granted to the Commission. *See* 18 U.S.C. § 4218(d) (1982); *Bialkin v. Baer,*

---

1. This Note was subsequently published in the Federal Register as a proposed rule on March 12, 1987. A modified version of the Note was published as a final rule on May 8, 1987 and can now be found at 28 C.F.R. § 2.36(a)(3) (1987). The modified note reads, in its entirety, as follows:

NOTE: Offenses committed in a prison or in a Community Treatment Center that are not limited to the confines of the prison or Community Treatment Center (e.g., mail fraud of a victim outside the prison) are graded as new criminal behavior in the community.
28 C.F.R. § 2.36(a)(3) (1987).

719 F.2d 590, 593 (2d Cir.1983).[2] Moreover, "[d]eference to the [C]ommission's interpretation of its own regulations is required unless that interpretation is shown to be unreasonable." *Bialkin, supra,* 719 F.2d at 593.

## A. The First Petition

■ The only issue raised by the first petition that warrants extended discussion is petitioner's assertion that the Note contained in section 2.36–02(b) of the Manual is a substantive rule "masquerading" as a procedural regulation and, as such, is void because it was not adopted in conformity with the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 551 *et seq.* (1982). *See* Pet. I at ¶¶ 24–30.[3]

Section 4 of the APA, 5 U.S.C. § 553 (1982), requires that agencies publish notice of proposed rules in the Federal Register and provide interested parties with an opportunity to comment. However, excepted from this provision are "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A). It follows that plaintiff's claim must be rejected if the rule at issue is interpretative rather than substantive.

Applying the principles enunciated in *New York v. Lyng,* 829 F.2d 346 (2d Cir. 1987), it is clear that the rule is interpretative and that neither notice nor comment was required.[4] In *Lyng,* the Second Circuit rejected the contention that a ruling by the Secretary of Agriculture interpreting a previously promulgated food stamp eligibility regulation was a substantive rule promulgated in violation of the APA. *See id.* at 353–54. At issue was a ruling by the Secretary of Agriculture providing that reim-

---

**2.** Although 18 U.S.C. § 4218 and other statutes governing the operation of the Parole Commission were repealed effective November 1, 1987, they are applicable to this action, which involves conduct of the Commission relating to an individual convicted before that date. *See* Pub. L. No. 98–473, Title II, §§ 218(a)(5), 235, 98 Stat. 2027, 2031 (1984), as amended by Pub.L. No. 99–217, § 4, 99 Stat. 1728 (1985); *see also* 18 U.S.C.A. § 3551 note (1987 Supp.)

**3.** Petitioner raised seven issues in his first petition, seeking a writ of habeas corpus, a writ of mandamus, and injunctive relief. All claims except for the first, discussed above, were rejected by the Court at Oral Argument. Those claims will be discussed here only briefly.

Petitioner's second and third claims, which challenge the decision of the Commission to require more than 12 additional months actual imprisonment beyond his original presumptive parole date, based upon the consecutive sentence of 18 months, were not considered by the Court at Oral Argument because they had been raised in an earlier petition pending at that time before Judge Duffy in this district. *See* Transcript of Oral Argument ("Tr.") *Tr.* at 12–13. Petitioner's fourth claim, which challenges the Commission's decision to apply the rescission guidelines, is clearly without merit because the parole policy guidelines explicitly direct that when new criminal behavior is committed while in confinement, the Commission is to consult those rescission guidelines. *See* 28 C.F.R. § 2.20(i) (1987). Petitioner's fifth claim, which challenges the Commission's decision to measure the severity of his attempted tax fraud as if it had succeeded, must also be rejected. That decision is clearly in compliance with the applica-

ble regulation, which is neither arbitrary nor irrational. *See* 28 C.F.R. § 2.20, Ch. 1, ¶ 102 (1987).

Petitioner's reliance on *United States v. Henderson,* 386 F.Supp. 1048 (S.D.N.Y.1974), to support his sixth claim, which attacks the Commission's decision to regard petitioner's new criminal activity as a crime committed within the community, is clearly misplaced because *Henderson* is both legally and factually inapposite. Also lacking in merit is petitioner's last claim, which alleges that the Commission's rules and regulations create "status" offenses and violate his rights to equal protection and due process. The Commission's classification of offenders is neither arbitrary nor capricious, and is in compliance with the Parole Reform Act of 1976. *See Young v. United States Parole Comm'n,* 682 F.2d 1105, 1109 (5th Cir.), *cert. denied,* 459 U.S. 1021, 103 S.Ct. 387, 74 L.Ed.2d 517 (1982); 18 U.S.C. § 4206(a).

**4.** In order to determine whether the Note in question was an interpretative rule, the Court directed at Oral Argument that an affidavit be filed indicating how the Parole Commission viewed the Note and how it was applied, anticipating that its focus would be on whether the Parole Commission viewed the Note as binding. *See Tr.* at 13–14. In accordance with the Court's directive, respondents filed the Affidavit of James L. Beck, Director of Research and Program Development for the United States Parole Commission ("Beck Aff."), which described the origin of the Note and its application. *See* Beck Aff. at ¶¶ 5–7. In light of *New York v. Lyng,* 829 F.2d 346 (2d Cir.1987), however, whether the Commission views the Note as binding is of no further significance.

bursements received pursuant to New York's restaurant allowance must be included in calculating income for the purposes of establishing food stamp eligibility. This restaurant allowance was paid to individuals who were unable to prepare food at home to compensate for the increased cost of food prepared away from home. *See id.* at 348–49.

The State of New York contended that the ruling was inconsistent with a prior regulation which provided that reimbursements for normal household living expenses, including food eaten *at home,* were not excluded from the calculation of income. *See id.* at 350. The State argued that the inclusion of income for meals *at home* clearly implied that the cost of meals outside the home was not includable in calculating income. *See id.* The Second Circuit rejected this argument, holding that the ruling including as income reimbursements received for food prepared *away from home* was not "plainly inconsistent" with the regulation including as income reimbursements for food eaten *at home. See id.* at 351. The Court also rejected appellant's challenge under the APA, noting that "[s]ince there was no prior interpretation of the food stamp regulations concerning any program like New York's restaurant allowance, the Secretary's interpretation did not change any 'existing rights or obligations.'" *Id.* at 353. Therefore, the ruling was held to be an interpretative rule not subject to the notice and comment requirements of § 553. *See id.* at 354.

That holding is dispositive here. No prior contrary interpretation of section 2.36(a)(3), the regulation governing "new criminal behavior while in the community," is alleged to have ever been rendered in a situation such as petitioner's. Indeed, the facts are precisely to the contrary. The Note was promulgated in response to a situation analogous to that of petitioner's, wherein the Parole Commissioners applied the rescission guidelines of section 2.36(a)(3) to a large scale fraud perpetrated on members of the community by an incar-

cerated prisoner. *See* Affidavit of James L. Beck ("Beck Aff.") at ¶ 5. Thus, it is clear that the Note "did not change any 'existing rights or obligations.'" *Lyng, supra,* 829 F.2d at 354. *Compare Linoz v. Heckler,* 800 F.2d 871, 877 (9th Cir.1986) (provision of Medicare Carrier's Manual which withdrew coverage previously provided held to be substantive); *Credit Union Nat'l Ass'n v. National Credit Union Admin. Bd.,* 573 F.Supp. 586, 588–89, 591 (D.D.C.1983) (ruling changing payout priorities for involuntarily liquidated federal credit unions held to be substantive); *see also Lewis–Mota v. Secretary of Labor,* 469 F.2d 478 (2d Cir.1972) (directive of Secretary of Labor suspending list of precertified aliens "changed existing rights and obligations"; by virtue of that "substantial impact" notice and comment required).

Moreover, the introduction to the Commission's Manual indicates that notes contained in the manual are intended only for internal guidance, "do not confer legal rights and are not intended for reliance by private persons." *See* Beck Aff. at Ex. 4. This strongly supports the respondents' argument that the Note in question is interpretative, because "an agency's conclusion that its [rule] is interpretative 'in itself is entitled to a significant degree of credence.'" *Viacom Intern. Inc. v. FCC,* 672 F.2d 1034, 1042 (2d Cir.1982) (quoting *British Caledonian Airways, Ltd. v. CAB,* 584 F.2d 982, 992 (D.C.Cir.1978)).

■ Petitioner also argues that even if the Note is interpretative and therefore not subject to the promulgation requirements of section 553, it still could not be applied to petitioner because at the time of his hearing, the Commission had failed to publish the Note in compliance with 5 U.S.C. § 552. *See* Tr. at 17–18. Section 3 of the APA, as amended, 5 U.S.C. § 552, requires agencies to publish in the Federal Register "substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated by the agency." 5 U.S.C. § 552(a)(1)(D).[5] How-

---

5. As noted *supra,* the Note contained in

§ 2.36–02(b) was published in the Federal Reg-

ever, this publication requirement "attaches only to matters which if not published would adversely affect a member of the public.'" *Lyng, supra,* 829 F.2d at 354 (quoting *Hogg v. United States,* 428 F.2d 274, 280 (6th Cir.1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 805 (1971)); *see also* 5 U.S.C. § 552(a)(1). Since there is no contention that non-publication of the Note adversely affected petitioner or any other member of the public, the Court concludes that the Note is not subject to the publication requirement of section 552(a)(1).[6]

■ Respondents have moved for costs pursuant to Fed.R.Civ.P. 11 in connection with the first petition, an issue not resolved by the Court at Oral Argument. *See* Resp. Mem. at 33–34. Because the Court concludes that most of petitioner's arguments were "warranted by existing case law or a good faith argument for the extension, modification, or reversal of existing law," Fed.R.Civ.P. 11, the Court does not find Rule 11 sanctions to be appropriate. Therefore, the Court need not decide whether Rule 11 costs may be properly awarded against a petitioner for habeas corpus.

## B. *The Second Petition*

■ As noted *supra,* petitioner filed a second petition seeking a writ of habeas corpus or injunctive relief after dismissal of the habeas portion of the first petition. The Court agreed to accept that petition as a related case and treat it as a motion to reargue the prior petition. For the reasons which follow, the Court concludes that that petition must also be dismissed.

Although the petition does not clearly set forth the theories upon which it is based, it is clear that petitioner is challenging the action of the Parole Commission in reevaluating his case at the hearing on January 15, 1986. Petitioner argues that the revised notice of action issued on January 6, 1986 omitted any mention of an intention to reevaluate the case, and that therefore, the Commission violated its own "order" in reopening and reevaluating the entire case to consider the new 18–month consecutive sentence, thus depriving petitioner of the due process of law guaranteeed by the Fifth Amendment. *See* Pet. II at ¶¶ 15, 20.

This argument must be rejected. Initially, the Court notes that petitioner has alleged no prejudice resulting from the alleged omission. Moreover, although the corrected notice of action did not itself advise petitioner of the Commission's intent to reopen and reevaluate the entire case, the corrected notice of action cited 28 C.F.R. § 2.28(c) as the basis for reopening and retarding the effective parole date. Because that section provides that the Commissioner's obligation to reopen and reevaluate is mandatory, petitioner had adequate notice of the Commission's proposed action and his due process rights were not violated.[7]

## CONCLUSION

For the reasons set forth *supra,* the petitions in 86 Civ. 4868 and 86 Civ. 9610 are dismissed. Respondents' motion for costs in connection with 86 Civ. 4868 is denied.

It is SO ORDERED.

---

ister in May 1987. *See supra* note 1.

**6.** Moreover, the non-publication of the Note is of diminished relevance in light of § 552(a)(2), which provides that "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register" must be made available for public inspection and copying. *See* 1 K. Davis, *Administrative Law Treatise* § 5.11 (2d ed. 1978). It appears that the Commission has complied with § 552(a)(2). *See* Beck Aff. at ¶ 8.

**7.** Petitioner also challenges the Commission's recalculation of his parole date, suggesting that his "sanction" for the new criminal conduct can not exceed 12 months. *See* Pet. II at ¶¶ 22–24, 31–32. This argument was undoubtedly included because of Judge Duffy's dismissal of the petition pending before him. Subsequently, however, the parties agreed in the Second Circuit that that case should be remanded and the issue is once again pending before Judge Duffy. *See Sturm v. United States Parole Commission,* 827 F.2d 765 (2d Cir.1987). Therefore, the Court will not address the merits of this argument.