**AMERICAN MEDICAL ASSOCIATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

82 C 7213.

United States District Court, N.D. Illinois, E.D.

June 3, 1988.

George A. Platz, Frank V. Battle, Jr., J. Timothy Kleespies, Sidley & Austin, Chicago, Ill., for plaintiff.

Thomas R. Jones, Atty., Tax Div. Dept. of Justice, Washington, D.C., and Eileen M. Marutzky, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER [1]

SHADUR, District Judge.

This Court's June 22, 1987 memorandum opinion and order ("Opinion I," 668 F.Supp. 1085) detailed its findings of fact and conclusions of law on the principal liability issues in this case, based on the voluminous evidentiary record [2] and trial memoranda submitted by American Medical Association ("AMA") and the United States. Then this Court's supplement to Opinion I ("Opinion II," 668 F.Supp. at 1101) went on, at the litigants' request, to deal with the validity of certain Internal Revenue Service ("IRS") regulations necessarily implicated in the decision of this litigation. In part Opinion II held Reg. (f)(4) invalid for the United States' failure to comply with APA's notice requirements embodied in APA § 553.

As if to prove that afterthoughts and second guessing are not limited to the private sector, the United States has now filed a motion for reconsideration and supporting memorandum. Now it contends the APA notice requirement is inapplicable to Reg. (f)(4) because it is "interpretative" and therefore outside the APA § 553 notice requirements. It freely admits that argument was not made the first time around (U.S. Mem. 2 & n. 1)—indeed, it really has to do that to escape the constraints applicable to motions for reconsideration (see generally *National Union Fire Insurance Co. of Pittsburgh v. Continental Illinois*

---

1. This opinion will follow the same usage as Opinions I and II (referred to in the first paragraph of the text) in employing the various defined terms used in those opinions. Accordingly this opinion will not bother to repeat all those definitions of terms.

2. One of the parties' joint submissions was a proposed Final Pretrial Order ("FPTO"), as re-

quired by this District Court's General Rule 5.00 (discussed later in the text). In the proposed FPTO, which this Court immediately entered in the form submitted (see n. 3), the parties set out their own ground rules for decision as well as a great many other matters intended to serve as grist for this Court's mill.

*Corp.*, 116 F.R.D. 252, 253 (N.D.Ill.1987) and cases cited there). But the United States fails utterly to explain *why* it did not urge that proposition before, as it had every opportunity to do.

### Waiver

■ In fact, the situation offers even less room for possible explanation than the United States' total lack of explanation would suggest. As AMA's current responsive Mem. 2 points out, the United States took exactly the opposite position in its original Trial Mem. 15 (emphasis added):

> The AMA's objection to the validity of the regulation is grounded upon the assertion that it was not promulgated in accordance with the Administrative Procedure Act (APA) cited as Title 5 U.S.C. § 551 et seq. The regulation at issue is Treas. Reg. § 1.512(a)–1(f)(4). *Most governmental regulations including Treasury Regulations are subject to the APA.* See *Wendland v. Commissioner*, 79 T.C. 355 (1982).

And the jointly-agreed-upon FPTO specifically provided in its Attachment (i) (emphasis added):

> Any theory of liability or defense not set forth in the foregoing briefs [a reference back to the earlier provision in Attachment (i) to the parties' trial memoranda, which were to be and were in fact submitted after the FPTO] *will not be considered* by the Court.

That provision was directly responsive to and in conformity with this District Court's General Rule 5.00 and its Standing Order establishing pretrial procedure. That Standing Order designates the standard FPTO form and, in its footnote 11 explaining the FPTO's requirement of trial briefs, specifically states:

> Any theory of liability or defense that is not expressed in a party's trial brief will be deemed waived.

Nor is that waiver concept simply a matter of enforcement and application of a local court rule—though that alone would be enough to find waiver. On the contrary, General Rule 5.00 and the Standing Order have themselves been adopted in direct response to and in conformity with Fed.R.Civ.P. 16(d) and (e). And as *Erff v. Markhon Industries, Inc.*, 781 F.2d 613, 618 (7th Cir.1986) (citations omitted, emphasis in original) has said in rejecting a plaintiff's argument not identified in the pretrial conference before the district judge:

> As we have recently emphasized, "the district court need not investigate the evidence for arguments that might possibly support [the plaintiff's] claim: it was the *plaintiff's* responsibility to raise the *arguments* that it seeks to use now on appeal." ... "In our view, a trial judge may properly depend upon counsel to apprise him of the issues for decision. He is not obligated to conduct a search for other issues which may lurk in the pleadings." ... A judge is not obligated and must not become an active participant in any litigation before him. Because the plaintiff failed to properly present to the district court in a lawyer-like fashion the arguments supporting his second theory, he did not disclose to the district court in the pre-trial conference the theory on which he now attempts to rely.

Accord as to the final pretrial order (citing *Erff*), *Kuba v. Ristow Trucking Co.*, 811 F.2d 1053, 1055 (7th Cir.1987) ("The observation that the claim ... is not in the pretrial order would have been sufficient justification for the district court to decline to entertain it").

Nor can the United States' originally-taken position, specifically confirming the applicability of the APA § 553 notice requirements to Reg. (f)(4), be dismissed as a mere oversight. In this case the parties shaped their own procedures for decision by this Court, taking many months to generate and submit a proposed FPTO that would both permit and facilitate a decision on stipulated facts.[3] Attachment (b) to the

---

3. Exhibit 1 to this opinion is the two-page statement the litigants submitted with the FPTO. It was received. and the "Proposed Final Pretrial Order" became the FPTO entered by this Court, on December 15, 1986.

FPTO, the "Agreed Statement of Contested Issues," included this one:

> Is Treas. Reg. 1.512(a)–1(f)(4) invalid because that provision as adopted differs substantially in effect from the version of the provision contained in the only notice of proposed rule making given with respect to the adoption of such provision, contrary to the requirements of the Administrative Procedure Act, 5 U.S. C. § 553(b), and the Treasury Department's own procedures?

All the United States' briefing on that issue dealt not at all with any case law even suggesting the inapplicability of the APA § 553 notice requirement. Instead the cases cited and discussed by the United States focused entirely on the question Opinion II, 668 F.Supp. at 1104–06 then decided: whether a *second* notice was required because Reg. (f)(4) had made such a major revision to the proposed version that had been the subject of the government's original notice.

■ There is no great mystery as to why the United States' original position, as set out in its Trial Memorandum, was that APA § 553 *did* apply to Reg. (f)(4). As the later text discussion will reflect, courts give greater weight to administrative regulations that are intended to have the force of law than to those that are not—a dichotomy often expressed in shorthand terms labeling such regulations as "legislative" or "interpretative"[4] respectively. That meant the United States had every incentive the first time around, when it was principally urging the substantive validity of Reg. (f)(4), to put the regulation into the former category. And in turn that meant it was to the United States' advantage *not* to characterize the regulation as "interpre-

tative" and hence as outside APA § 553. Little wonder, then, that its Trial Mem. 15–20 devoted five pages to seeking to refute AMA's APA-based argument without a whisper suggesting that APA § 553 did not apply to Reg. (f)(4).

All this is the stuff of which waivers are fashioned. Indeed if the litigant here were not the government, as to which estoppel does not operate in the normal fashion (if at all),[5] this might well be a classic case for application of that doctrine. It would seem that whether the matter is characterized in estoppel or more properly in waiver terms, litigants should not be permitted to play fast and loose with the system in this manner: urging one legal position when it is to their advantage and then, when the opposite position is perceived as more advantageous, changing course 180 degrees.

Obviously aware of its vulnerability on waiver grounds, the United States (in its reply memorandum filed February 17, 1988) effectively seeks to convert the issue into one of estoppel rather than waiver (though it does not use estoppel language). It urges it should not be held subject to waiver principles because AMA was not prejudiced by the United States' original argument. As the government would have it (R.Mem. at 3), no prejudice is involved because the issue was one of law rather than affecting the evidentiary record tendered to this Court.

That notion, with its implications in the present context, is most disquieting. What the United States is really saying is that it would have been perfectly happy to continue to leave this Court with the idea (according to the United States' current argument, the *false* idea) that APA § 553 *was* applicable, with the important corollary that this

---

4. APA § 553(b) and (d) use the word "interpretative" rather than "interpretive," the usage this Court would ordinarily employ. After all, does anyone "interpretate" anything? Both the statutory usage and this Court's own curiosity sent it back to the books. Webster's *Third New International Dictionary* was of little help: It listed both "interpretative" and "interpretive" without differentiation, and it included "interpretate" as an archaic version of "interpret." However, Fowler's *Modern English Usage* was (not surprisingly) much better on the subject: It said *"interpretative,* not *interpretive,* is the right form"

because *"-ive* adjectives are normally formed on the Latin [past participle] stem, i.e., here *interpretat-."* In deference to both Fowler and the statute itself, this opinion will consistently employ "interpretative."

5. See (*Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 60–61, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984); *id.* at 66–68 (Rehnquist, J., concurring in the judgment)).

Court should give greater judicial deference to the Treasury Regulation adopted in conformity with that provision. At least the United States was happy to do so as long as it believed that concept would lead to this Court's approval of Reg. (f)(4). But when this Court then rejected the regulation because of the IRS' noncompliance with APA § 553, the government decided to shift ground—to give up its previously-perceived advantage stemming from its express acknowledgement that the APA notice provision applied—and to urge the opposite position, all because it now found that a disadvantage of its earlier legal position had turned out to outweigh the originally-perceived benefit.

But litigation is not a game. Even less is it a game whose rules may be changed when a player—even the government—finds that the existing rules carry a risk it had not perceived. This Court will not under the circumstances speculate on the existence or nonexistence of "prejudice" in the limited sense now argued by the United States.

■ In any event, the United States has both explicitly and implicitly *waived* the argument it now proffers. Waiver, unlike estoppel, should operate with full force against the United States as against any private litigant. Thus this opinion might well end here. But because limitations on the sovereign are always problematic and because a higher court—despite the unequivocal evidence of the government's waiver—might find some basis for disagreeing with this Court on that issue, it is wise to turn to the merit (or lack of merit) of the United States' substantive position.

### APA § 553

■ In its current turnabout, U.S. Mem. 3 begins its substantive argument by saying this about the already-mentioned dichotomy in the types of administrative regulations (citation omitted):

> Legislative or substantive regulations are issued by an agency pursuant to statutory authority and generally implement the statute. Interpretive rules on the other hand are issued by an agency to simply advise the public of the agency's construction of the statutes which it administers. The distinction between the two types of rules, although sometimes close, is important. Whereas legislative rules are similar to valid statutes, a court has the power to substitute its judgment for administrative judgment in the case of interpretive rules.

It follows by invoking *Vermont Yankee Nuclear Power Corp. v. Natural Resources Department,* 435 U.S. 519, 546–47, 98 S.Ct. 1197, 1213, 55 L.Ed.2d 460 (1978):

> There are compelling reasons for construing Section 4 in this manner. In the first place, if courts continually review agency proceedings to determine whether the agency employed procedures which were, in the court's opinion, perfectly tailored to reach what the court perceives to be the "best" or "correct" result, judicial review would be totally unpredictable. And the agencies, operating under this vague injunction to employ the "best" procedures and facing the threat of reversal if they did not, would undoubtedly adopt full adjudicatory procedures in every instance. Not only would this totally disrupt the statutory scheme, through which Congress enacted "a formula upon which opposing social and political forces have come to rest," *Wong Yang Sung v. McGrath,* 339 U.S., [33] at 40 [70 S.Ct. 445, 450, 94 L.Ed. 616 (1950)] but all the inherent advantages of informal rulemaking would be totally lost.

*Vermont Yankee* does not however deal with, or even impinge upon, the issue posed here. For that purpose the analysis should properly begin by identifying the statutory requirement, then turning to what the few relevant cases have said that bears on the notice issue.

APA § 553(b) and (d) itself exempts from the notice requirement what are labeled "interpretative rules" as contrasted with "substantive rules" (or "legislative rules"):

> (b) Except when notice or hearing is required by statute, this subsection [ (b) requiring publication of notice in the Federal Register] does not apply—

(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice....

\* \* \* \* \* \*

(d) The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except—

(1) a substantive rule which grants or recognizes an exemption or relieves a restriction;

(2) interpretative rules and statements of policy; or

(3) as otherwise provided by the agency for good cause found and published with the rule.

It should be noted parenthetically that the Commissioner's own regulation (Treas.Reg. § 601.601(a)(2)) does not limit the publication and notice procedure to the APA § 553 mandate:

Where required by 5 U.S.C. 553 and in such other instances as may be desirable, the Commissioner publishes in the FEDERAL REGISTER general notice of proposed rules (unless all persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law). This notice includes (i) a statement of the time, place, and nature of public rulemaking proceedings; (ii) reference to the authority under which the rule is proposed; and (iii) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

Accordingly the mere fact that the original version of Reg. (f)(4) was the subject of notice in the Federal Register creates no compelling inference as to the category ("interpretative" or "legislative") into which that Regulation falls (see Appendix).

Both the parties' submissions and this Court's research have uncovered only one reported case that deals with the concept of "interpretative" regulations in the context of the APA's notice requirement and Treasury Regulations. *Redhouse v. Commissioner*, 728 F.2d 1249, 1253 (9th Cir.1984) says on that score:

It is doubtful that treasury regulations need to comply with the 30–day notice requirement.

But *Redhouse* did not stop with that "doubtful" dictum. It went on to find that the amended regulation the court was considering fell under the "interpretative rule" exception to the notice requirement even if the expressed doubt were resolved the other way—"[e]ven assuming that the 30–day notice requirement applies to treasury regulations" (*id.*). In *Redhouse* the amended regulation was one simply revoking an "erroneous interpretation [of an earlier regulation] based upon two revenue rulings that gave a broad construction to an ambiguity in the regulation" (*id.*). As *Redhouse, id.* (citation omitted) concluded its discussion by saying:

Revenue rulings merely represent the opinion of the Commissioner and are therefore classic examples of interpretative rules.... The amendment, changing the Commissioner's revenue rulings, was also of an interpretative nature.

At best, then, *Redhouse* is a slim reed that will not of itself provide the United States much support.

Other case law dealing with Treasury Regulations is certainly even more oblique, and at least some of it inferentially supports AMA's contention. All the decisions in this area treat with the interpretative-legislative or interpretative-substantive dichotomy not in terms of the Commissioner's duty to give notice, but rather in the context of giving the legislative-substantive kind of regulation greater judicial respect than the "interpretative" type. Thus *Rowan Cos. v. United States*, 452 U.S. 247, 252–53, 101 S.Ct. 2288, 2292, 68 L.Ed.2d 814 (1981) (citations omitted) said:

We consider Treasury Regulations valid if they "implement the congressional mandate in some reasonable manner." ... "In determining whether a particular regulation carries out the congressional mandate in a proper manner, we look to see whether the regulation harmonizes with the plain language of the statute, its origin, and its purpose." Harmony between statutory language and regula-

tion is particularly significant in this case. Congress itself defined the word at issue—"wages"—and the Commissioner interpreted Congress' definition only under his general authority to "prescribe all needful rules." 26 U.S.C. § 7805(a). Because we therefore can measure the Commissioner's interpretation against a specific provision in the Code, we owe the interpretation less deference than a regulation issued under a specific grant of authority to define a statutory term or prescribe a method of executing a statutory provision.... Where the Commissioner acts under specific authority, our primary inquiry is whether the interpretation or method is within the delegation of authority.

That same message was reinforced the following year in *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 24, 102 S.Ct. 821, 827, 70 L.Ed.2d 792 (1982) (again emphasizing the fact that the statutory term dealt with in the regulation "has already been defined with considerable specificity by Congress").

Both those cases strongly suggest that the distinction to be made is between (1) regulations that merely fill in the interstices by giving a term already defined in the Code some further interpretation (hence being "interpretative" in the literal sense) and (2) regulations that define or give substantive content to language undefined with any real specificity in the Code (hence being "legislative" in the legal-realism sense that recognizes administrative agencies as potential lawmakers). If so, the regulation at issue in this case clearly fits into the latter category. It is not a mere clarification of statutory language. Quite the contrary is true: It defines the calculation of "circulation income," a term itself wholly a creature of regulation, part of a complex web giving content to the statutory term "unrelated business taxable income" (Code § 511), as broadly defined in Code § 512(a)(1).

Indeed, regular practitioners in the tax field recognize that formal Treasury Regulations, as contrasted with Revenue Rulings, Revenue Procedures and the like, frequently (if not in fact normally) partake much more of the nature of legislation than interpretation. At least in the area of taxation and Treasury Regulations, it would seem more than a bit odd to adopt a bright-line rule that every regulation adopted under the general authority of Code § 7805(a)[6] must be "interpretative" in the APA § 553 statutory sense, while every regulation adopted under a more particularized statutory authorization is not. Instead the more sensible approach would appear to be that at least suggested in *Rowan* and *Vogel Fertilizer*, in which the existence or nonexistence of a precise statutory definition of the term later elaborated on by the Treasury Regulation would mark the watershed. That kind of treatment would be consonant with the perceptive comment in Bittker, *Federal Taxation of Income, Estates, and Gifts* ¶ 110.4.1 (1981) (quoted by our Court of Appeals in *Gehl Co. v. Commissioner*, 795 F.2d 1324, 1329 (7th Cir.1986) after citing *Vogel Fertilizer* and *Rowan*):

> In practice the distinction between legislative and interpretative regulations is often blurred, and the supposedly diverse standards of judicial review tend to converge and even to coalesce.

Nonetheless such Seventh Circuit cases as do speak of the term "interpretative" (*Gehl, id.; Water Quality Association v. United States*, 795 F.2d 1303, 1305 (7th Cir.1986)) do so in terms of a regulation's issuance under Code § 7805(a) as against its issuance under a more specific grant of authority. True enough, those cases do so only in passing and in the context of how much judicial respect should be accorded the regulations adopted by the administrative branch, and not at all in terms of the

---

**6.** That section reads:

Except where such authority is expressly given by this title to any person other than an officer or employee of the Treasury Department, the Secretary or his delegate shall prescribe all needful rules and regulations for the enforcement of this title, including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue.

APA notice requirement. For example, *Gehl,* 795 F.2d at 1328 says:

> Relatively less deference is owed to a regulation issued under the general grant of authority contained in Section 7805(a) (*i.e.,* a so-called "interpretative regulation"), than one issued under a specific grant of authority (*i.e.,* a so-called "legislative regulation").

All the same, if this opinion had to rest on what our Court of Appeals has said in dictum on the subject of what constitutes an "interpretative regulation," the United States would appear to have the better of the argument.

But neither those attenuated dicta nor *Redhouse,* with its own previously-described attenuated dictum suggesting that the government's now-urged reading of APA § 553 might be correct, is really persuasive. This Court finds far more convincing the analysis in *Chamber of Commerce of the United States v. Occupational Safety and Health Administration,* 636 F.2d 464 (D.C. Cir.1980), which squarely reads APA § 553 in the manner suggested by this opinion's earlier discussion of *Rowan* and *Vogel Fertilizer.* Although the regulation involved in *Chamber of Commerce* was one adopted by the Occupational Safety and Health Administration rather than the Treasury Department, the authorizing legislation was directly parallel to Code § 7805(a). OSHA § 8(g)(2), 29 U.S.C. § 657(g)(2), reads:

> The Secretary and the Secretary of Health and Human Services shall each prescribe such rules and regulations as he may deem necessary to carry out their responsibilities under this chapter, including rules and regulations dealing with the inspection of an employer's establishment.[7]

*Chamber of Commerce,* 636 F.2d at 468 (citation omitted) said:

> A rule is interpretive, rather than legislative, if it is not "issued pursuant to legislatively-delegated power to make rules having the force of law" or if the agency intends the rule to be no more than an expression of its construction of a statute or rule.

It therefore held the quoted statutory provision "allows the Secretary to promulgate legislative as well as interpretive rules" (*id.*) It then proceeded to examine the *nature* of the regulation, and not merely the source of authority for its promulgation, to determine whether the regulation was or was not "interpretative" so as to be excluded from the APA § 553 notice requirement (*id.* at 468–70). Much of the *Chamber of Commerce* language (*id.* at 468–69) (citations and footnote omitted, emphasis in original) might well have been written (or readily adapted) for this case:

> Ascertaining that an agency intended to engage in legislative rulemaking presents a far more difficult inquiry. Divining agency intent is rarely a simple matter, for bureaucratic boilerplate often obscures the true purpose. The administrative agency's own label is indicative but not dispositive; we do not classify a rule as interpretive just because the agency says it is.... Instead, "it is the substance of what the [agency] has purported to do and has done which is decisive." ...

> Despite the Administration's averments, we cannot conclude that it intended its new regulation to be interpretive.

\*    \*    \*    \*    \*    \*

> Moreover, the effect of the new regulation exposes the Administration's true intent. Interpretive rules "'are statements as to what the administrative officer thinks the statute or regulation means.'" ... Such rules only provide a "clarification of statutory language," ... the interpreting agency only "'reminds' affected parties of existing duties,"....

\*    \*    \*    \*    \*    \*

---

**7.** As is evident, the phrase "such rules and regulations as he may deem necessary" is the direct counterpart of the Code § 7805(a) language "all needful rules and regulations," and the two statutes' broad-brush statements of the purposes for which regulations may be prescribed by the respective administrators are also a matched pair (compare the just-quoted language in the text with the language quoted in n. 6).

Congress has not "legislated and indicated its will" on the question ..., therefore the Administration must have done more than exercise its " 'power to fill up the details.' " ...

Though the ... regulation does not merely *explain* the statute, the effect of an interpretive rule, the regulation certainly endeavors to *implement* the statute, the effect of a legislative rule.

As the quoted language reflects, the court's analysis led it to the conclusion that the regulation was *legislative* in nature and therefore invalid because of the Administration's failure to follow the APA § 553 notice procedures. That line of analysis, if followed here, would produce the identical result.

\* \* \* \* \* \*

In sum, the suggestion in Supreme Court decisions (*Rowan* and *Vogel Fertilizer*) that the existence of a precise statutory definition is part of the matrix for determining whether a regulation is or is not "interpretative" would point AMA's way. On the other hand, only one Court of Appeals opinion (*Redhouse*) has had occasion to deal with that subject in the context of APA § 553 as applied to Treasury Regulations, and the dictum in that case appears to favor the government somewhat. And our own Court of Appeals has expressed—though only in passing—a like notion of where the dividing line exists between "interpretative" and "legislative" Treasury Regulations (*Gehl* and *Water Quality Association*). But for this Court the most persuasive approach is that taken in *Chamber of Commerce*, dealing with a regulation promulgated under statutory authorization entirely comparable to that underpinning Reg. (f)(4), and finding that regulation subject to the APA § 553 notice requirement.

**8.** After the parties had initially briefed the United States' motion for reconsideration, this Court requested further submissions on several topics it found relevant but not fully covered by the briefing to that point. This opinion has treated with the most critical of those matters. In light of the result reached, there is no need to decide another of those questions: whether, as the United States argues (R.Mem. at 6–7), the United States' failure to follow its own Internal

*Conclusion*

It is unnecessary in this case to resolve the issue last discussed—one that has never been decided specifically in any case, and that has been treated with blurred contours in the somewhat related case law: whether Reg. (f)(4) is merely "interpretative" so as not to have required a notice under APA § 553.[8] When the United States thought it was to its own advantage to take the opposite position in this litigation, it did so. That would certainly call for a holding of waiver if a private litigant were involved, and it should do the same where the government is the combatant. This Court denies the United States' motion for reconsideration of Opinion II.

APPENDIX

As n. 8 reflects, this Court asked that the government provide additional input as to the effect (if any) to be given to the United States' having in fact given notice of its originally proposed version of Reg. (f)(4). It develops that when both the original version and the final version of the regulation were promulgated (1972 and 1975, respectively) the Regulatory Flexibility Act (5 U.S.C. §§ 601–612) had not yet been adopted (that statute was enacted September 19, 1980 and took effect January 1, 1981). Accordingly the IRS did not, in publishing its notice of the original proposed regulation, follow its current practice of including in that notice a statement of its position as to whether or not the proposed regulation was "interpretative" so as to trigger or not trigger the notice requirements of APA § 553. In fact, during the relevant 1972–75 period the Treasury Regulation as to Federal Register notice (Treas. Reg. § 601.601(a)(2)) was substan-

Revenue Service Manual as to publication and notice would invalidate Reg. (f)(4) even apart from any APA violation. As for the one remaining issue—whether any independent significance is to be ascribed to the fact that the United States *did* publish notice of the original proposed version of Reg. (f)(4)—that too need not be resolved, but it is worth brief treatment in the annexed Appendix to this opinion.

tively identical to the current version of that regulation quoted in the text. Thus the only evidence that exists as to the United States' contemporaneous position at the time of the original notice is the mere fact that the tentative regulation was published under the heading "Proposed Rulemaking"—signifying not much (if anything) either way in probative terms.

### EXHIBIT 1

### STATEMENT OF THE PARTIES SUBMITTING PROPOSED FINAL PRETRIAL ORDER

Pursuant to this Court's order of September 4, 1986, plaintiff American Medical Association and defendant United States submit herewith their Proposed Final Pretrial Order ("Proposed Order"). Although "tax suits" are excluded from the Court's standing order on pretrial procedures by General Rule 5.00(b)(ix), the parties have attempted to follow the provisions of that order as nearly as possible in preparing the Proposed Order.

To the extent that the Proposed Order departs from the provisions of the standing order on pretrial procedures, such departures result primarily from the essentially uncontested nature of the facts in this action. As stated on page 4 of the Proposed Order, the parties are in agreement that, unless desired by the Court upon its review of the evidence submitted, no trial or further hearing in this action is necessary and that the claims asserted may be resolved by the Court upon the extensive stipulation of facts and attached exhibits filed by the parties on September 4, 1986, and upon the supplemental stipulations, exhibits, verified statements and depositions being submitted with the Proposed Order. The parties propose, as set forth in item (i) of the Proposed Order, that they file comprehensive briefs referencing these evidentiary materials in accordance with the schedule there set out, in lieu of any other briefs or argument or proposed findings and conclusions contemplated by the standing order on pretrial procedures.

Respectfully submitted,

(s) George A. Platz
Sidley & Austin
One First National Plaza
Chicago, Illinois 60603
(312) 853–7000
One of the attorneys for
American Medical Association

(s) Thomas R. Jones

Thomas R. Jones
Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Ben Franklin Station
Washington, D.C. 20044
One of the attorneys for
the United States