**AMERICAN MEDICAL ASSOCIATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 82 C 7213.**

United States District Court, N.D. Illinois, E.D.

Aug. 15, 1988.

George A. Platz, Frank V. Battle, Jr., J. Timothy Kleespies, Michael L. Schultz, Sidley & Austin, Chicago, Ill., for plaintiff.

Thomas R. Jones, Tax Div., U.S. Dept. of Justice, Washington, D.C., Eileen M. Marutzky, Asst. U.S. Atty., Chicago, Ill., for defendant.

**MEMORANDUM OPINION
AND ORDER** [1]

SHADUR, District Judge.

This Court's June 22, 1987 memorandum opinion and order ("Opinion I," 668 F.Supp. 1085) detailed its findings of fact and conclusions of law on the principal liability issues in this case, based on the voluminous evidentiary record [2] and trial memoranda submitted by American Medical Association ("AMA") and the United States. Then this Court's supplement to Opinion I ("Opinion II," 668 F.Supp. at 1101) went on, at the litigants' request, to deal with the validity of certain Internal Revenue Service ("IRS") regulations necessarily implicated in the decision of this litigation. In part Opinion II held Reg. (f)(4) invalid for the United States' failure to comply with APA's notice requirements embodied in APA § 553.

After the United States then moved for reconsideration of Opinion II, on June 3, 1988 this Court issued its most recent opinion, 688 F.Supp. 358 (N.D.Ill.), denying that motion. That left matters in the posture defined by Opinion II: the stay of this action "until a regulation is promulgated that fills the gap created by the invalidation of Reg. (f)(4)" (668 F.Supp. at 1108).

It might reasonably have been expected that the United States—faced with the clear invitation of Opinion II, which specifically recognized the heavy burden confronted by a taxpayer in challenging any regularly-adopted IRS regulation (see discussion, 668 F.Supp. at 1103)—would have welcomed the opportunity to cure the procedural defect that tainted the present regulation. Though this Court cannot of course speculate on whether the substantive content of a newly-promulgated (or repromulgated) Reg. (f)(4) would have surmounted the comparatively low threshold required for the substantive validity of

---

1. This opinion will follow the same usage as Opinions I and II (referred to in the first paragraph of the text) in employing the various defined terms used in those opinions. Accordingly this opinion will not bother to repeat all those definitions of terms.

2. One of the parties' joint submissions was a proposed Final Pretrial Order ("FPTO"), as required by this District Court's General Rule 5.00. In the proposed FPTO, which this Court immediately entered in the form submitted, the parties set out their own ground rules for decision as well as a great many other matters intended to serve as grist for this Court's mill.

such regulations,[3] the United States' failure (more accurately, its refusal) to make the attempt is scarcely understandable.

Nonetheless, at the status hearing June 30, 1988 counsel for the United States announced it would forgo the invitation to republish and repromulgate Reg. (f)(4). This Court then ordered the parties to submit further memoranda as to what result should ensue from the fact that the IRS regulations consequently now contain a gap left by the invalidation of Reg. (f)(4)—a gap self-created by the United States' studied refusal to cure the flaw. Those memoranda have now been submitted, and this final memorandum opinion and order resolves AMA's refund claim in light of all the parties' submissions.

■ What the United States now contends for is that even though Reg. (f)(4) is invalid, it should still be honored by this Court because it represents the "reasonable" determination of the IRS. With all due respect, that position regrettably casts a cloud on the government's bona fides, because it so directly flouts the congressional will. When APA § 553 requires—as it does—publication, notice and public comments as a condition precedent to the final adoption of regulations, the necessary implication is that the promulgating authorities will give open-minded consideration to

the public input.[4] It is an impermissible alternative to view the process as a meaningless exercise, in which the closed-minded bureaucrat goes through the motions as a sham prerequisite to announcing a preconceived result ("Don't bother me with the facts—my mind is made up").

Nothing justifies the United States in having it both ways. Had the IRS published the required statutory notice as to its proposed drastic revision of Reg. (f)(4), obtained public comments and then promulgated the final version in identical form, neither this nor any other court would have engaged in a cross-examination of the IRS' motives and intent. Thought control is not the order of the day. Good faith consideration of the public responses by the administrative agency is presumed—conclusively, at that. But Reg. (f)(4) in the form invalidated by Opinion II has *never* been exposed to public comment and scrutiny, followed by sober consideration and final administrative adoption. It is not entitled to the strong presumption of validity afforded properly adopted regulations.[5]

■ Accordingly the question becomes how to read the IRS regulations *without* the invalidated Reg. (f)(4). AMA urges it is entitled to the full refund it seeks whether this Court looks at Reg. (f)(3)(iii) or at Reg. (d)[6] or at Reg. (c).[7] Except for its

---

3. Under the circumstances here, that would be an impermissible advisory opinion on an unknown (and unknowable) set of facts.

4. Indeed, more than a mere implication is involved. Congress has told administrative agencies they are to adopt their regulations "[a]fter consideration of the relevant matter presented" by "interested persons" (APA § 553(c)):

   After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.

5. United States Final Mem. 2–3 seeks to take advantage of the judicial rule that administrative interpretations are to be sustained if reasonable, even though a court might conclude another reading is more reasonable; see Opinion II, 668 F.Supp. at 1103, quoting *National Muffler*

*Dealers Ass'n, Inc. v. United States*, 440 U.S. 472, 488, 99 S.Ct. 1304, 1312, 59 L.Ed.2d 519 (1979):

   The choice among reasonable interpretations is for the Commissioner, not the courts.

But that argument improperly treats the version of Reg. (f)(4) generated in *violation* of the APA as the equivalent of a regularly adopted regulation. Acceptance of that concept would invite the frustration of Congress' APA requirement—a kind of nose-thumbing at the statutory principle that regulations, to be entitled to strong judicial respect, should be those that have survived the crucible of drafting, publication, public comment, thoughtful consideration by the administrative agency and only then the agency's ultimate approval.

6. That alternative is suggested if this Court were to find a kind of infectious invalidity, under which the failure of Reg. (f)(4) would topple Reg. (f)(3)(iii) as well.

7. That final alternative is suggested if a domino effect would occur, under which both Reg.

flawed argument that Reg. (c) somehow "authorizes" application of the invalid Reg. (f)(4) test because Reg. (c) calls for a "reasonable" allocation,[8] the United States argues only:

 1. "it is not *necessary* to use the AMA's allocation method based on provision f(3) which is premised on the ground that other comparable commercial publications would not charge for their publications" (United States Final Mem. at 3-4, emphasis added)[9]; and

 2. as to Reg. (d)(2), this Court is not *required* to accept the testimony and exhibits of AMA's expert witness Professor William Wecker simply because that evidence is not contradicted by anything else in the record.

Both those arguments are unpersuasive —the first because the standard is not what it is *necessary* for this Court to use, and the second because the question is not whether this Court *must* credit AMA's expert witness. What the United States has done here is to create a vacuum that this Court must fill in with the most reasonable solution the record calls for. For that purpose the answer is one to which the United States has offered no response at all, except to say this Court is not *forced* to choose it: Reg. (f)(3)(iii) and its proper reading considered on its own.

Opinion I, 668 F.Supp. at 1098 and then Opinion II, *id.* at 1106-07 had rejected AMA's proposed reading of Reg. (f)(3)(iii) because it ignored the cross-reference there to Reg. (f)(4). Though Reg. (f)(3)(iii) on its own "provides a generalized standard" (*id.* at 1106) for determining allocable membership receipts, this Court found the cross-reference to Reg. (f)(4) meant that generalized standard was not intended

to be read on its own. As Opinion II, *id.* at 1107 said:

> But now Reg. (f)(4) has been invalidated, leaving a gap in the regulations: Reg. (f)(3)(iii) provides a standard, but it refers to a now-nonexistent regulation for instructions as to how to implement the standard. This Court cannot perform such major judicial surgery at AMA's request, by excising the reference to Reg. (f)(4) and reading Reg. (f)(3)(iii) as though it were intended to stand alone (as it clearly is not).

By now deliberately eschewing the offered opportunity to adopt a valid Reg. (f)(4) and thus to fill the regulatory gap,[10] the government has to be viewed as having expressly elected to treat the Reg. (f)(3)(iii) cross-reference to Reg. (f)(4) as nonexistent —as pure surplusage, to be ignored because it lacks any possible meaning. Opinion II, *id.* at 1107 n. 18 had said:

> AMA would treat Reg. (f)(4) as though it were the regulatory equivalent of the vermiform appendix, whose removal leaves the body of the regulations as well off post-surgery as it was before. But it is for IRS, not AMA (or for that matter this Court), to determine whether the regulatory general standard is to be fleshed out by such implementing instructions—whether the excised part is purely vestigial (performing no useful function) or is rather a vital organ.

Now IRS *has* determined "the regulatory general standard is [*not*] to be fleshed out by such implementing instructions...." By that deliberate choice the government has really invited a construction of Reg. (f)(3)(iii) on its own.

---

(f)(3)(iii) and Reg. (d) would fall with Reg. (f)(4)'s invalidity.

**8.** As this opinion has just held, the basic premise of that argument—this Court's need to credit the invalidated Reg. (f)(4) reading as though it were the duly adopted IRS version—cannot be accepted without doing violence to the very purpose of APA § 553.

**9.** That same argument is stated immediately afterward at United States Final Mem. 4:

> The Court does not have to choose the AMA's f(3) method of allocation which would reduce the unrelated business taxable income where the f(4) method was reasonable.

**10.** Opinion II, *id.* at 1107-08 stated that opportunity in unequivocal terms:

> This action is stayed until a regulation can be promulgated that fills the gap created by the invalidation of Reg. (f)(4). Only then will this Court be in a position to decide whether AMA is entitled to the remainder of its refund claim.

In those terms AMA has provided wholly plausible testimony from Professor Wecker, and the United States has offered nothing to rebut it. Appendix 1 to this memorandum opinion and order comprises AMA Final Mem. 6–7 and Appendix A to that Final Memorandum. This Court credits the evidence summarized there as an entirely fair and reasonable reading of Reg. (f)(3)(iii) standing on its own, where the United States has chosen to place it—and it is a reading wholly uncontroverted by record evidence from the United States. Under those circumstances the United States cannot rely on its own invalid action to suggest the possibility of a different reading.

Accordingly AMA is entitled to a full refund as claimed. This Court is contemporaneously entering a judgment order to that effect.[11]

## APPENDIX 1

The reasons why application of Reg. (f)(3)(iii) standing alone produces less taxable income than was reported on the AMA's returns were discussed in the AMA's Supplemental Trial Brief filed on July 22, 1987, at 10–13 and Appendix B. Briefly stated, those reasons are as follows:

In its returns for years 1975 through 1978 the AMA allocated to "circulation income" for *JAMA* and *AM News* the arbitrary portion specified by Reg. (f)(4) of the dues of certain of its members. This resulted in an annual "circulation income" for *JAMA* of not less than $2.5 million annually and for *AM News* of not less than $500,000 annually (see AMA Trial Brf., Exh. A).

The testimony in this case of Prof. William Wecker shows that even the dues allocated to "circulation income" in the AMA's returns greatly exceed the amount of subscription income that periodicals like *JAMA* and *AM News* would produce if published for profit by a taxable organization and sold only to unrelated parties, as hypothesized by Reg. (f)(3)(iii). Prof. Wecker found a highly reliable correlation between the substantive content of commercially published medical periodicals, measured by their frequency of citation, and their subscription income. Applying this correlation to the AMA's publications for years 1975–1978 results in an estimated total annual subscription income for *JAMA* of no more than $1.4 million and for *AM News* of no more than $200,000. See Wecker Ver. St., pp. 3–8; see also AMA Trial Brf., pp. 10–11.

The United States has submitted no comparable evidence as to the amount of subscription income the AMA's periodicals would actually have produced if they were published for profit by a taxable organization and distributed to unrelated parties, as specified by Reg. (f)(3)(iii). Prof. Wecker's careful and persuasive testimony on this subject thus stands uncontradicted on the record in this case.

The AMA has attached as Appendix A to this memorandum a schedule showing, among other things, that use of Prof. Wecker's estimated subscription income instead of the "circulation income" reported by the AMA produces a lower taxable unrelated business income for the AMA for each of the years 1975–1978 than was reported in the AMA's returns.[3] All of the data included in Appendix A is taken from the record in this action and is uncontra-

---

11. This memorandum opinion and order should not be viewed as a ruling that AMA would not be entitled to a like judgment on either or both of the alternative grounds it argues in its Final Memorandum. In light of the conclusion reached here, no opinion is expressed on that score.

3. Appendix A calculates only the effect of the invalidity of Reg. (f)(4) on *JAMA* and *AM News* because the impact on these periodicals alone is enough to show that the AMA is entitled to the

full amount of its refund. For the purpose of Appendix A, the unrelated business income of the AMA's other periodicals is assumed to be that which was asserted by the IRS. (Appendix A does give effect to the Court's ruling in Opinion I as to the determination of "direct advertising cost" for *JAMA* and *AM News,* as such ruling does not appear to be affected by the invalidity of Reg. (f)(4), and the parties are in agreement as to the impact of that ruling.)

dicted. Application of Reg. (f)(3)(iii) standing alone thus clearly supports a judgment in favor of the AMA in the full amount of its refund claim.

## APPENDIX A

| | Gross Advertising Revenues Less Direct Adv. Costs (per Opinion I) | Readership Costs (per Opinion I) | Subscription Income (per Professor Wecker) | Taxable Advertising Income | Taxable Adv. Income as Reported in AMA Returns |
|---|---|---|---|---|---|
| **JAMA** | | | | | |
| 1975 | $1,372,462 | $3,769,191 | $1,190,000 | $ –0– | $ 269,339 |
| 1976 | 1,708,324 | 3,814,758 | 1,297,000 | –0– | 738,569 |
| 1977 | 1,646,524 | 4,066,348 | 1,284,000 | –0– | 1,099,740 |
| 1978 | 1,585,511 | 4,686,621 | 1,327,000 | –0– | 1,585,511 |
| **AM NEWS** | | | | | |
| 1975 | 464,131 | 1,072,758 | 183,657 | –0– | –0– |
| 1976 | 386,837 | 1,533,022 | 183,657 | –0– | –0– |
| 1977 | 486,643 | 1,934,503 | 183,657 | –0– | –0– |
| 1978 | 553,445 | 2,006,145 | 183,657 | –0– | 3,263 |
| **All Other Periodicals*** | | | | | |
| 1975 | | | | 452,154 | 353,319 |
| 1976 | | | | 443,548 | 377,996 |
| 1977 | | | | 676,419 | 613,646 |
| 1978 | | | | 747,273 | 663,188 |
| **Total** | | | | | |
| 1975 | | | | 452,154 | 622,658 |
| 1976 | | | | 443,548 | 1,116,565 |
| 1977 | | | | 676,419 | 1,713,386 |
| 1978 | | | | 747,273 | 2,251,962 |

* For purposes of this computation, taxable advertising income for all other periodicals is as asserted by the IRS in the Examination Report (Stip., Ex. 7).

## JUDGMENT ORDER

This Court has issued findings of fact and conclusions of law as set forth in its opinions dated June 22, 1987 ("Opinion I," 668 F.Supp. 1085), September 2, 1987 ("Opinion II," 668 F.Supp. 1101) and June 3, 1988 ("Opinion III," 688 F.Supp. 358). Despite the invitation to do so contained in Opinion III, the United States has elected not to promulgate any new regulation to take the place of Treasury Regulation § 1.512(a)–1(f)(4), held invalid in Opinion II.

This Court has concluded, as set forth in its memorandum opinion and order filed contemporaneously with this judgment order, that the taxes paid by American Medical Association ("AMA") for its taxable years ended November 30, 1975, 1976, 1977 and 1978 exceed for each such year the taxes owed under applicable Treasury Regulations in the absence of Treasury Regulation § 1.512(a)–1(f)(4) by at least as much as the amount of the AMA's refund claims in this action. It is hereby ordered and adjudged (1) that AMA is entitled to refunds of taxes and assessed interest paid in the following respective amounts for its taxable years ended on November 30 of the following years:

| 1975 | $1,424,709 |
| 1976 | 1,337,966 |
| 1977 | 1,039,171 |
| 1978 | 366,465 |

together with interest on such refunds as provided by Internal Revenue Code § 6611, 26 U.S.C. § 6611, and (2) that judgment shall be entered for AMA and against the United States for such amounts.